## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANE DOE, an individual; *and* | ) | |
| JANE ROE, an individual | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-495-G |
| | ) | |
| STATE OF OKLAHOMA *ex rel.* | ) | |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY OF OKLAHOMA, | ) | |
| a state agency; and | ) | |
| JOHN DOE, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR LEAVE TO PROCEED
## USING PSEUDONYMS AND FOR PROTECTIVE ORDER

**COMES NOW**, Jane Doe and Jane Roe, Plaintiffs in the above-styled action, in accordance with Federal Rule of Civil Procedure 5.2, and in conjunction with the filing of the First Amended Complaint, hereby file this Motion for Leave to Proceed Using Pseudonyms and for Protective Order (the "Motion").  In doing so, Plaintiff Jane Doe acknowledges that her initial *Motion for Leave to Proceed Using Pseudonyms and For Protective Order* [Dkt. No. 4] is mooted by the filing of the First Amended Complaint.  In further support of this Motion, Plaintiffs hereby state and assert as follows:

### INTRODUCTION

Plaintiff Jane Doe brought the above-styled action against her former employer and *alma mater*, the State of Oklahoma *ex rel.* Board of Regents of the University of Oklahoma (the "University") and John Doe, her former supervisor, to seek redress in connection with

(a) injuries suffered as a result of John Doe's egregious harassment and discrimination; and (b) the University's longstanding policy, practice, custom, and culture of ignoring or otherwise remaining indifferent to reports of sexual harassment and misconduct and sex and/or gender discrimination on campus.  More specifically, Jane Doe, a former Academic Advisor in a particular Department at the University, seeks recovery for her injuries *via* (*i*) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, alleging (in part) that the University maintained a policy, custom, and culture of intentional ignorance and indifference to sexual misconduct on campus and reports thereof, including to misconduct undertaken by Defendant John Doe; (*ii*) Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.*, alleging the University engaged in an unlawful employment practice by discriminating against Plaintiff "because of" sex and otherwise creating a sexually hostile work environment; *and* (*iii*) 42 U.S.C. § 1983, alleging intentional violations by the University and John Doe, respectively, of Plaintiff's rights to due process and equal protection under the law.

In filing the First Amended Complaint, Jane Doe (1) added a claim for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, pursuant to a Right to Sue Letter received from the Equal Employment Opportunity Commission ("EEOC") on or about July 18, 2023; and (2) joined an additional party, Jane Roe, another victim of John Doe's pattern and practice of harassment and discrimination.  Jane Roe, also a former Academic Advisor in the same Department as Jane Doe (her predecessor), seeks redress in connection with (a) injuries suffered as a result of John Doe's egregious harassment and discrimination; and (b) the University's longstanding policy, practice, custom, and culture

of deliberately ignoring or snubbing reports of sexual harassment and misconduct and sex and/or gender discrimination on campus.  Jane Roe, like her co-Plaintiff, seeks recovery for her injuries *via* Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.*; *and* 42 U.S.C. § 1983; Jane Roe also raises a claim for negligence, properly noticed under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et seq.*, relating to the University's failure to protect her from a known or readily knowable risk of harassment.  Like Jane Doe's claims, all of Jane Roe's claims, as pleaded, are limited to encompass only facts, circumstances, and events occurring before June 13, 2022—the date on which Jane Doe initiated the now-ongoing Title IX proceedings against Defendant John Doe.

Given the nature of this case as one involving an egregious pattern of sexual misconduct and harassment perpetrated against multiple women, which includes specific factual allegations of sexual assault and battery raised by Jane Doe against John Doe, the First Amended Complaint incorporates and states deeply personal, intimate, and embarrassing details of certain acts which implicate the privacy interests of *both* Plaintiffs and Defendant John Doe, the accused discriminator.  Further, these allegations are currently being developed and scrutinized in the context of a yet-to-be-resolved, confidential Title IX proceeding, involving *all* Parties to this suit.  Accordingly, Plaintiffs filed this Motion as a means of protecting and preserving the identities of the individuals involved in this proceeding (and an ongoing Title IX Investigation) and otherwise highlighting to this Court the risk of harm associated with publicizing the Parties' names. Plaintiffs, as such, respectfully request that this Court grant them leave to, at least for the

time being: (1) identify themselves, in the Case Style and throughout these proceedings, in unsealed filings, *etc.*, as "Jane Doe" and "Jane Roe," respectively; and (2) similarly identify the individual accused of harassment and discrimination as "John Doe."

## ARGUMENTS & AUTHORITIES

**PLAINTIFFS' PRIVACY INTERESTS IN PROCEEDING PSEUDONYMOUSLY GREATLY OUTWEIGH THE GENERAL PRESUMPTION OF OPENNESS IN JUDICIAL PROCEEDINGS.**

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a)." The Federal Rules, further, generally "make no provision for suits by persons using fictitious names or for anonymous plaintiffs." *Nat'l Commodity and Barter Ass'n, Nat'l Commodity Exchange v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989). As such, Courts have recognized that: "[p]ublic access to this information is more than a customary procedural formality[,]" and that "First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings" (*e.g.*, by permitting pseudonymous filings). *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). **"Nonetheless, the rule [that every pleading name the parties] is not absolute."** *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (emphasis added). This Court, accordingly, has discretion to grant the instant Motion. *See Doe v. Weber State Univ.*, Case No. 1:20-CV-00054-TC-DAO, 2021 WL 5042849, at *3 (D. Utah, N. Div. Oct. 29, 2021).

Before permitting a pseudonymous filing, this Court must determine whether factors warranting maintenance of a party's privacy interests (*via* the use of a pseudonym) outweigh the customary presumption of openness in judicial proceedings. *See Doe v.*

*Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A 1981).  Critically, there is no "hard and fast formula" for making this determination or for otherwise ascertaining whether a party may sue anonymously. *Id.* at 185.  There are, however, three considerations which may weigh on such determination: (1) whether the party seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit compels a party to disclose information of the utmost intimacy; and (3) whether a party may be compelled to admit an intention to engage in illegal conduct, thereby risking criminal prosecution. *Id.* at 185. (citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).  Importantly, these facts are not to be applied and considered in the form of "a rigid, three-step test."  Rather, it is this Court's task to "carefully review all the circumstances of [this] [] case and then decide whether the customary practice of disclosing the [Parties'] identit[ies] should yield to the plaintiff's privacy concerns." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992); *see also Plaintiff B*, 631 F.3d at 1316 ("After the *Stegall* court clarified that the [three *Southern Methodist University* factors were] only the first step for evaluating whether to let a plaintiff proceed to trial anonymously, courts have considered other contexts in analyzing all the circumstances of a given case.").  Ultimately, the proper test for permitting a party (or multiple parties) to proceed pseudonymously is whether such party retains a substantial privacy right outweighing the "customary and constitutionally embedded presumption of openness in judicial proceedings." *Stegall*, 653 F.2d at 186.  Here the Parties each retain such a privacy right outweighing the "presumption of openness" in judicial proceedings.

Here, the first and third *Southern Methodist University* factors are not necessarily helpful. But the second *Southern Methodist University* factor—*i.e.*, whether prosecution of the case may compel a party to disclose information of the "utmost intimacy"—weighs mightily in favor of Plaintiffs and Defendant John Does' respective privacy concerns and otherwise supports the granting of this Motion. When considered in light of the circumstances of this particular case, moreover, it is clear that the customary practice of openness must give way to anonymity; the privacy interests of Jane Doe and John Doe, respectively, and their respective risks of reputational and mental and emotional harm from public exposure outweigh any interest the public may otherwise have in knowing their particular identities at this time.[1]

"[I]nformation of the utmost intimacy" references or generally includes reference to deeply personal, intimate matters such as birth control, abortion, homosexuality, transsexuality, mental illness, and personal religious beliefs. *Doe v. Compact Information Sys.*, 2015 WL 11022761 *4 (N.D. Tex. Jan. 26, 2015); *see, e.g., Southern Methodist University*, 599 F.2d at 712, 713 (finding that "matters of a sensitive and highly personal nature" include "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families"). Logically, such definition should extend to *other* similarly intimate matters with respect to which the public gains no benefit from knowing

---

[1] John Doe still works for the University and his continued work there, upon information and belief, depends (in whole or in part) on the resolution of the relevant Title IX proceeding and other claims involving the Parties herein. The public disclosure of John Doe's name—while he still works at the University and while the Title IX proceeding specifically undertaken by the University is ongoing—may therefore pose a unique risk of reputational, professional, and economic harm to Defendant John Doe.

the details—namely, traumatic experiences involving sexual harassment, abuse, or assault. To this point, courts have recognized that "cases involving sexual assault on colleges and universities have [frequently] garnered significant media attention, posing the risk of further reputational harm" to both the accuser *and* the accused. *Doe v. Louisiana State University*, No. 20-379-BAJSDJ, 2020 WL 6493768 (M.D. La. June 30, 2020).  And to mitigate this risk, Courts "repeatedly" have allowed the individual parties involved in on-campus sexual assault allegations to be identified *via* pseudonyms. *Id*. (citations omitted); *see also Doe v. University of Mississippi*, No. 3:21-cv-201 DPJ-FKB, 2021 WL 6752261 (S.D. Miss. April 14, 2021).  Similar action is necessary in the instant case to protect the individual Parties from unnecessary and avoidable harm, as well as maintain the integrity of an ongoing Title IX Investigation involving all Parties hereto.

Here, the First Amended Complaint includes factual allegations of sexual harassment, misconduct, and even sexual assault levied against Defendant John Doe (and as known to the University).  Perhaps most pertinently here, these allegations specifically include:

- a detailed, personal, and potentially embarrassing description of a sexual assault and battery perpetrated by John Doe against Jane Doe, including facts about John Doe's specific conduct and fondling of Jane Doe; *and*

- embarrassing and intimate details concerning sexual harassment and sex and/or gender discrimination, including details concerning inappropriate conversations undertaken by John Doe, unwelcome advances made by John Doe, and John Doe's coercive means of responding to Plaintiffs' separate rejections.

These allegations, further, do not represent the *full* extent of personal and intimate details which may be released during the course of these proceedings.  Quite the contrary,

Plaintiffs anticipate that the further prosecution of their claims against the University will undoubtedly require the further exposure of sensitive, highly personal details pertaining to (a) their sufferance from sex and/or gender discrimination while at the University; (b) the nature and extent of John Doe's conduct; and (c) the significant impact of such conduct on Plaintiffs' lives.  Plaintiffs thus retain an increasingly strong privacy interest in maintaining the confidentiality of the uniquely private details and circumstances surrounding their harassment—and for Jane Doe, eventual assault by—John Doe.

Further supporting the granting of this Motion, in a separate case involving Jane Doe and John Doe premised on many of the same allegations raised herein, *see Jane Doe v. John Doe*, District Court of Cleveland County, State of Oklahoma, Case No. CJ-2022-636, *at* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=cleveland&number=CJ-2022-636&cmid=2408052 (*last visited* Sep. 5, 2023), the Court permitted the Parties to proceed using pseudonyms, recognizing the use of fictitious party designations as "necessary in the interests of justice."  In reaching this determination, the District Court accepted that the Parties' interests in privacy outweighed any public interest in the disclosure of the Parties' names, recognizing (1) the sensitive, potentially embarrassing and damaging character of the allegations in the Petition; (2) legitimate fears held by Jane Doe and John Doe—and, relevant here, shared by Jane Roe—that the public disclosure of the Parties' names will lead to reputational harm arising from Jane Doe's placement in a professional community within which John Doe wields significant professional influence; (3) the real risk of embarrassment or public exposure to other victims or potential victims of John Doe who have not sought to come forward publicly; (4) legitimate fears of

retaliation held by Jane Doe *and others* relating to their coming forward with allegations against John Doe; and (5) Jane Doe's cooperation with ongoing investigations into John Doe's alleged conduct, including an ongoing Title IX investigation, which is intended to remain confidential and preserve the rights of the participating Parties—at least until such investigation and proceeding has concluded.

Lastly and perhaps most importantly, the University will suffer *zero* prejudice in this case in the event Plaintiffs and Defendant John Doe are permitted to proceed using pseudonyms. As the First Amended Complaint implicitly indicates *via* its identification of separate, ongoing Title VII and Title IX proceedings involving all Parties hereto, the University already knows the identities of both Plaintiff and John Doe. Accordingly, the University will have "an uninhibited opportunity to litigate this matter regardless of whether Plaintiff[s'] identit[ies] [are] disclosed publicly." *See Doe v. Colgate Univ.*, No. 15-1069, 2016 WL 1448829 at *3 (S.D. N.Y. Apr. 12, 2016). Similarly, the University will have a full opportunity to litigate this matter *vis-à-vis* John Doe without his identity being released herein. If anything, the nondisclosure of the individual Parties' respective names at this juncture will at least preserve the ongoing integrity and confidentiality of the Parties' Title IX proceeding (run by the University), which has been going on for over a year at this point. For these reasons, the individual Parties should be permitted to proceed using pseudonyms.

## CONCLUSION

For these reasons, Plaintiffs respectfully request the Court **GRANT** this Motion and their corresponding requests to, at least for the time being: (1) identify themselves, in the

Case Style *and* throughout these proceedings, in unsealed filings, *etc.*, as "Jane Doe" and "Jane Roe," and (2) identify the individual accused of harassing them as "John Doe" and enter a Protective Order requiring the same.   If this Court should deny this Motion, Plaintiffs humbly request leave to amend the pseudonymous First Amended Complaint, as filed on September 5, 2023.

Respectfully Submitted,

s/ Wyatt McGuire
J. Blake Johnson, OBA No. 32433
Ryan Kiesel, OBA No. 21254
Wyatt McGuire, OBA No. 34720
OVERMAN LEGAL GROUP, PLLC
809 NW 36th Street
Oklahoma City, Oklahoma 73118
Telephone:   (405) 605-6718
Facsimile:   (405) 605-6719
Email:   blakejohnson@overmanlegal.com
         ryan@rkoklaw.com
         wyattmcguire@overmanlegal.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

s/ Wyatt McGuire
For the Firm